## GUILLORY v. McMANUS.
### No. 1078.

Court of Appeal of Louisiana. First Circuit.
Jan. 24, 1933.

E. H. Guillory, of Ville Platte, for appellant.

L. L. Perrault, of Opelousas, for appellee.

MOUTON, J.

In 1931, defendant, owner of a public warehouse in Basile, La., issued receipts to John F. Estes, Jr., and T. R. Estes for a lot of rice which had been deposited by them in his warehouse.

The following order dated February 23, 1932, was given plaintiff, O. E. Guillory, viz.:

"This is authority to W. C. McManus to deliver to O. E. Guillory, 20% of Lots 74, 77, 127, 130, and 72 of Rice stored for John F. Estes, Jr., and T. R. Estes being land rent for 1931 due by them to Mrs. D. O. Fuller."

This order is signed by J. M. Estes, agent of Mrs. Fuller.

It is shown that the rice which had been stored in the warehouse was raised on a farm belonging to Mrs. Fuller who signed the order, above reproduced, through her agent, J. M. Estes. It also appears that one-fifth or 20 per cent. thereof was due her for rent of her farm. This one-fifth was bought from Mrs. Fuller by O. E. Guillory, plaintiff, about which there seems to be no dispute.

D. M. McManus, known as Dave McManus, was running the warehouse for defendant, W. C. McManus, as testified to by defendant.

After purchasing the one-fifth of the rice, plaintiff and J. M. Estes went over to the warehouse, where with the order, hereinabove mentioned, Dave McManus was apprised of plaintiff's claim, under the written order, for the delivery of the 20 per cent. of the rice to plaintiff.

J. M. Estes testifies, and so does plaintiff, that the one-fifth of the lot of rice was pointed out by Dave McManus to plaintiff and J. M. Estes.

J. M. Estes testifies that plaintiff, in his presence, instructed Dave McManus "to leave his rice there and sell it and divide the proceeds."

Five receipts bearing the numbers 02206, 02207, 02208, 02209, and 02210 were issued by the defendant's warehouse, through Dave McManus, to cover the one-fifth share of Mrs. Fuller in the rice, consisting of 104 sacks of Blue Rose and 36 sacks of Fortuna Rough rice, then in the warehouse. These receipts read: "Received of O. E. Guillory of Mrs. D. O. Fuller, at owners' risks ——— sacks Rough Rice," giving the numbers of the respective lots.

■ A nonnegotiable receipt is one which states that the goods received will be delivered to the depositor or to any specified person, and the negotiable receipt is where it is said they will be delivered to the bearer or to the order of any person named in such receipt. See Act No. 221 of 1908, p. 326, §§ 4 and 5. There is no such statement in the receipts by defendant herein.

They are wagon receipts, it seems, as the word ."Hauler" is printed therein, and, we think, were so properly termed by the district judge in his written opinion.

The court says in its opinion that the 20 per cent. of the rice in question covered by Mrs. Fuller's order "was never segregated," and counsel for defendant makes reference thereto in his brief.

The record shows that besides the receipts given for the one-fifth of the rice claimed by plaintiff, that Dave McManus carried out the instructions given to him by plaintiff in the presence of J. M. Estes and sold 104 sacks of the Blue Rose Rough rice in the lot of 140 sacks, for $158.50, after making the deductions for storage, etc. Such a disposition of the rice, it would seem, effected a physical segregation of the portion claimed by plaintiff, less the 36 bags of Fortuna rice that defendant refused to deliver and to which reference will be made hereafter.

Section 24 of Act No. 221 of 1908, provides, as follows:

"The warehouseman shall be severally liable to each depositor for the care and redelivery of his share of such mass to the same extent and under the same circumstances as if the goods had been kept separate."

This rule applies when the warehouseman permits fungible goods of the same kind and grade to be mingled. Here the mass had been segregated in sacks and for a stronger reason, the above rule should apply.

The section above refers to the depositor of the goods. Here, it is true that the original deposit of the rice was made by John F. Estes, Jr., and T. R. Estes. The receipts, hereinabove copied in part, say, "Received of O. E. Guillory of D. O. Fuller," were intended to be, as we understand them, mere acknowledgments from the haulers of the lots of rice deposited by them in the warehouse. After Dave McManus had accepted the order and had recognized the share of Mrs. Fuller for rent as being transferred to plaintiff, he issued to the latter the receipts for the number of sacks which belonged to the transferrer. He simply made a change in the depositors and recognized plaintiff as a depositor for the share owned by Mrs. Fuller, prior to her sale to plaintiff.

The district judge held, in substance, that Mrs. Fuller had no rice deposited in her name; that it had been deposited in the names of John F. Estes, Jr., and T. R. Estes, and consequently the warehouseman had no means of determining the question of the ownership of the rice other than by his records, "which did not show that Mrs. Fuller had any interest in the rice." The order from Mrs. Fuller, through her agent, to deliver to plaintiff one-fifth of the rice due her for rent, was not only accepted by defendant, but receipts were also issued by his warehouse for the rice. These were records which defendant had in his possession and showed beyond question that he knew that Mrs. Fuller had an interest in the rice and also plaintiff to whom she ordered her share of the rice delivered.

Section 1 of Act No. 211 of 1908, p. 315, says that the proportion of the lessor in the crop of the lessee is the property of the lessor.

The order from Mrs. Fuller conveyed to defendant information that she was entitled to one-fifth of that rice for rent, obviously of land. He was therefore notified by the terms of the order that she was the owner of the crop in the proportion stated. The language used in the order indicated that plaintiff was the transferee of the rice claimed by Mrs. Fuller, and if not, the defendant was, however, instructed to deliver the rice to plaintiff.

Dave McManus testifies that two or three days after plaintiff and J. M. Estes came to his office, a claim for the rice had been put in by Lee and T. R. Estes. Later, he gave a check for the 104 sacks of rice amounting to $158.50, and handed it over to Lee Estes. Hence, it is plain that plaintiff was claiming the title or possession of the rice for which J. F. and T. R. or Lee Estes were adverse claimants.

When a warehouseman is situated in such a predicament he may, under the provisions of section 17, Act No. 221 of 1908, "require all known claimants to interplead." His duty under the law is to refuse delivery of the goods that the ownership thereof may be judicially ascertained.

Counsel for defendant refers to the case of Brock v. Atteberry, 153 La. 649, 96 So. 505, 506, as being decisive of the issues herein presented.

In that case the warehouseman issued nonnegotiable receipts for rice deposited in his warehouse to Young, owner of the rice, who transferred the receipts to Brock about October 20, 1921, and Brock notified defendant of the transfer in November, 1921. "In the meantime," says the court, "Young, the owner of the rice, had affected his title thereto by procuring negotiable warehouse receipts therefor. * * * Plaintiff's rights must be measured by the rights of his transferor at the moment of this notification; he had no greater rights. The rice was his subject to the claims, whatever they might be, of the holders of the negotiable receipts."

There were no negotiable receipts issued by defendant in this case to J. F. and T. R. Estes, the original depositors of the rice, and who had neither negotiable nor nonnegotiable receipts, as before explained. They had wagon receipts which merely showed that they had deposited the rice, and plaintiff likewise had similar receipts showing that one-

fifth of the rice was to be delivered to him under the written instructions of Mrs. Fuller, transferrer, by virtue of her ownership as lessor.

J. F. Estes and T. R. Estes had not procured any negotiable receipts from defendant which had been transferred to any one claiming the rice as against plaintiff holding nonnegotiable receipts.

The issue in the Brock Case revolved around the rights of the litigants arising out of the receipts, negotiable and nonnegotiable, which had been issued in that case. There is no such contest here. In the instant case defendant had in his possession 140 sacks of rice about which there were adverse claims between J. F. and T. R. Estes and plaintiff to whom wagon receipts had been given. Instead of requiring these parties to interplead, as is provided in the warehouseman statute, defendant gave a check for the rice, and strange to say, made it payable to the order of Mrs. L. D. Harper, John Estes, Jr., and J. M. Estes, although claiming that the 104 sacks of rice for which it was given had been deposited by John F. Estes and T. R. Estes. Not only was the check made in favor of other parties than the two depositors, Dave McManus handed the check over to Lee Estes.

If defendant had given negotiable receipts to John F. Estes, Jr., and T. R. Estes, his obligation, as was said in the Brock Case, would have been to deliver the rice to them as holders thereof. They had only wagon receipts showing that the rice had been stored for them, and plaintiff had similar receipts for the 140 sacks authorized to be delivered to him by Mrs. Fuller, and which were held for plaintiff by defendant from the date of the issuance of the receipts.

Plaintiff is not relying entirely on these receipts for recovery against defendant. It was proved by plaintiff that the 140 sacks of rice came from the farm of Mrs. Fuller and was given for rent of her land and that it was sold to plaintiff. Plaintiff was therefore the owner by virtue of his purchase from Mrs. Fuller, through J. M. Estes.

The defendant, through Dave McManus, pointed out the rice when plaintiff bought, recognized his ownership by issuing the receipts, agreeing to sell it for plaintiff with the other rice and to divide the proceeds.

 After recognizing plaintiff as the owner of the 140 sacks of rice, defendant, through Dave McManus, sold 104 sacks as he had been authorized to sell by O. E. Guillory, plaintiff. The sale for the 104 sacks amounted to $158.50 for which the check was given to Lee Estes. The defendant is liable to plaintiff for that amount.

He refused to deliver to plaintiff the 36 sacks of Fortuna rice. If there were rival claimants for that rice, as he claims, defendant should have required these claimants to interplead therefor. He has not so required from other claimants, if there be any, as he had a right to do under section 17, Act No. 221 of 1908. He sold a portion of the rice for $158.50 for which he is responsible to plaintiff, as hereinabove stated, and is likewise liable to plaintiff for the 36 sacks Fortuna rice which he refused to deliver.

The market value of that rice is shown to be $2.25 per sack, gross, for which defendant is liable to plaintiff in default of delivery, less all lawful charges due thereon.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and it is further ordered and decreed that plaintiff have judgment against defendant for the sum of $158.50, with legal interest thereon from judicial demand; that plaintiff have judgment ordering defendant to deliver 36 sacks of Fortuna Rough rice represented by receipts 02207 and 02210 upon payment by plaintiff of storage and such other lawful charges due thereon; and that in default of such delivery that plaintiff have judgment condemning defendant to pay the sum of $2.25 per sack, gross, subject to storage and such lawful charges as may be due on said 36 sacks of rice, and that defendant pay all costs of this suit.